of an agreement between the attorneys, they are not to appear in opposition to plaintiff's appeal, and, after a year in a certain event, they are to prosecute their appeal, which will require the making of a case and exceptions, while plaintiff's appeal is taken and presented here on the judgment roll, without any case and exceptions. I think this will not answer. All appeals that are to be presented from this judgment should be heard at the same time. The court will not permit the attorneys to agree that the plaintiff's appeal may be first heard, and, in a certain event, the defendant's appeal may afterwards be brought before the court for hearing.

The action was brought to determine conflicting claims to real property. Plaintiff was in possession, but had no legal title. She claimed to be the heir of the deceased owner by adoption, and also claimed under an agreement with the deceased owner that, if she would live with him and care for him, he would give her the property. The referee (now Judge Pound) decided there was no adoption that enabled plaintiff to inherit the property from the deceased, and that she was not entitled to judgment establishing any rights under the alleged contract, that the defendants were the heirs of the deceased owner, but were not entitled to a judgment barring the plaintiff's alleged rights in the property. The plaintiff wants us to determine the questions of law argued by her, and upon the referee's findings of fact order full judgment in her favor and against defendants, without hearing such defendants upon these questions. It is queer that the attorneys for defendants should have made the agreement referred to in the appellant's points and letter inclosed.

I am in favor of refusing to consider the appeal in view of this statement in the points and the letter, which we may assume to be true. All concur.

---

### BRAINARD v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1909.)

1. RAILROADS (§ 282*)—QUESTION FOR JURY.

A car inspector employed by a railroad company to inspect the cars of defendant company which were to be delivered to his employer was instructed by the master of defendant's yard to inspect a number of cars, and, while he was inspecting them, he was injured, owing to another car being moved up against the string of cars that he was inspecting, which was done under the direction of one who was subject to the orders of the yardmaster. *Held*, that the question of negligence was one for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 918; Dec. Dig. § 282.*]

2. RAILROADS (§ 278*)—CONTRIBUTORY NEGLIGENCE.

Plaintiff knew that no flag or notice was put up indicating that he was at work inspecting the cars, and he did not notify the crew who were putting cars on the track, and did not look to see where the engine was. *Held*, that he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 895; Dec. Dig. § 278.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. RAILROADS (§ 278*)—INJURIES TO LICENSEES—ASSUMPTION OF RISK:

 In an action for injuries to a car inspector while inspecting in the yard of defendant railroad company the cars which were to be delivered by defendant to his employer, there was no question of assumed risk.

 [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 278.*]

 Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Oneida County.

Action by Warner Brainard against the New York, Ontario & Western Railway Company. From a judgment in favor of plain-tiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Howard D. Newton, for appellant.

D. Francis Searle, for respondent.

WILLIAMS, J. The judgment and order should be reversed on the law and facts, and a new trial granted, with costs to the appellant to abide event.

The action was brought to recover damages for personal injuries alleged to have resulted from the defendant's negligence. The plaintiff was employed by the New York Central Railroad Company as a car inspector. A part of his duties was to go to defendant's yards and inspect cars which were intended to be sent out over the New York Central Road, so as to avoid taking cars that were defective. On the day of the accident the plaintiff went to defendant's yard about 9 o'clock in the forenoon. He saw defendant's train crew working in the yard, shifting cars about. The yardmaster told plaintiff that the transfer was ready for him on track 5, was made up, and there were 17 cars there on that track. Plaintiff went at once to track 5, and found 17 cars thereon, and proceeded to inspect them. He went down on one side of the cars and back on the other side, looking over the wheels, drawbars, castings, and whatever there was to be examined. When he had inspected the 17 cars and had come back to the place he had started from, he found some more cars had been put in on the track for inspection, but did not notice how many there were. He went in between the seventeenth and eighteenth cars to inspect that end of the seventeenth car, and, while examining the knuckle pin (so called), the eighteenth car, which was standing about a foot away from the seventeenth car, was suddenly moved up against that car, and plaintiff's arm was caught and injured, and was subsequently amputated three inches below the elbow. The additional cars were put in on track 5 under the direction of the conductor of the train crew, who was subject to the order of the yardmaster. Plaintiff had been inspecting cars in the defendant's yard for many years, and was acquainted with the manner in which the business was carried on there. There were 15 tracks in the yard, and cars were being shifted from one track to another throughout the day and night. Cars intended to be transferred to the New York Central Road were put upon a track by themselves, and were there inspect-

ed by plaintiff. While making such inspections, no flag or sign was placed by the cars to indicate that the inspection was being made.

First. It was claimed that the defendant was guilty of negligence which caused the accident, in that its servants engaged in putting additional cars upon this track No. 5 did not look to see if plaintiff was making the inspection, and did not notify him they were going to throw the additional cars in. Apparently they did not know he was there. They did not intend to injure him. Possibly they were chargeable with notice that he was there. He was accustomed to be there inspecting cars designed for the New York Central Road. The yardmaster saw him when he came, and told him where the cars were placed that day for his inspection. Though the question is close, I would not want to hold that it was error to submit to the jury the question of the defendant's negligence.

Second. More serious questions are presented as to contributory negligence. The plaintiff knew how the business was accustomed to be done there, that cars were liable to be put in on the track where he was at work at all times of day. He knew that cars were actually put in on that track close to the cars he was inspecting while his work was being done. He knew that no flag or other notice was put up indicating that he was there at work, and he did not personally notify the crew who were engaged in putting cars on the track at the time that he was there, and they should be careful about moving the cars so as not to injure him. He saw cars in close proximity to him just put in, and yet he did not look to see where the engine was or if it was liable to push the seventeenth and eighteenth cars together while he was between them. I do not see under these circumstances how it could be claimed he was free from contributory negligence as it is legally defined. The trial court in submitting this question to the jury used only the most general language. It did not call attention to any specific things which might be considered as bearing upon this question, such as failure to give notice to the train crew that he was there at work, his knowledge that cars were put in there while he was at work, and his failure to look out for the engine or the movement of the cars. It seems as though, had there been some specific attention called to these things, the jury would not have gone wrong as they did on this question. Whatever counsel may have said to the jury in summing up, they did not ask the court to give any specific directions to the jury to lead their minds in the proper direction on this question. It will hardly do to say the plaintiff might excuse himself for his total want of care as to his personal safety by assuming the train crew would not back cars against those he was inspecting, even though they were putting cars on the track while he was at work. It was his duty to look and see where the engine was, what it was doing, and to notify the crew he was there at work, and request them to be careful not to push the cars against those he was at work upon.

Third. There was no question of assumed risk properly, so called, in the case. That applies only between employer and employé, and this was not such a case. What plaintiff knew of things as they existed in defendant's yard and the manner in which the business was

there transacted bears only upon the question of contributory negligence.

Fourth. There is no occasion to examine questions relating to the admission or exclusion of evidence, or requests to charge, as we conclude that the evidence bearing upon the question of contributory negligence was not sufficient to warrant a finding by the jury that the plaintiff was free from such negligence.

, Such a finding was certainly contrary to the evidence if not entirely without evidence to support it.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event upon questions of law and fact. All concur, except SPRING and ROBSON, JJ., who dissent.